THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANTHONY ROBINSON, Defendant-Appellant.

First District (1st Division)   No. 1—89—1345

Opinion filed October 5, 1992.—Rehearing denied November 23, 1992.

Randolph N. Stone, Public Defender, of Chicago (Henry L. Hams, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Christine Perille, Special Assistant State's Attorney, and Renee Goldfarb and Randall Roberts, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Defendant Anthony Robinson appeals from his conviction and sentence of 30 years' imprisonment for murder after being convicted by a jury for the shooting death of Charles Watson. On appeal defendant raises three issues: (1) whether the trial judge improperly injected his own bias during the hearing on defendant's motion to suppress his confession; (2) whether the court abused its discretion by denying defendant's motion to dismiss a juror for cause; and (3) whether the

prosecution made improper remarks during the closing argument which necessitates a new trial. We affirm.

Defendant first asserts that the trial judge erred by injecting his own bias into the determination of whether or not defendant's inculpatory statement should have been suppressed. Defendant contends the trial judge considered facts which were not in evidence when he commented about his own boxing and football experiences and his disbelief of the lack of injuries shown by defendants claiming to have been beaten by the police.

Defendant filed a motion to suppress a statement which was given to the police and assistant State's Attorney in January 1988 concerning his involvement in the robbery and murder of Charles Watson. Primarily, defendant asserted that he was repeatedly kicked and slapped by several police officers during his interrogation in late July. He claimed that the beating lasted for several hours and estimated that he was hit in the face approximately 25 to 50 times and kicked approximately 25 to 50 times. During the beating, he was screaming loudly and blood was splattered all over his nose, ear and clothes.

At the suppression hearing, testimony in support of the motion was presented which revealed that on or about July 30, 1987, four police officers went to defendant's apartment and questioned him about the whereabouts of an acquaintance, Fitzgerald Stewart. At that time, defendant responded that he had not seen Stewart since the previous day. Within the next day or so, the officers returned and transported defendant and his sister Antoinette to the police station where they were placed in the same room for about 45 minutes. Then, the two of them were placed in separate rooms where, according to defendant, the beating occurred. Although his injuries were not immediately visible, afterwards defendant realized that his nose and mouth were swollen and his ribs and ear were bruised. However, defendant did not seek medical treatment for his left ear until three days later when he went to the hospital.

A stipulation was entered into evidence which supported defendant's claim that he sought and received medical treatment for a perforated ear drum on August 4, 1987. Additionally, Antoinette testified that she heard her brother holler "don't hit me no more." She observed her brother in the interrogation room handcuffed to a wall and bleeding from his nose and mouth. She also recalled that when defendant returned home he was limping and said that he had been kicked in the groin area.

Defendant also testified that he was arrested on January 18, 1988, and brought back to Chicago from Dixon, Illinois, where Officer

Kill and another officer slapped him a few times. Because he was frightened and felt he had no other choice, he agreed to sign the papers and gave a statement to the assistant State's Attorney about the murder of Watson.

In opposition to the motion to suppress the statement, Detectives Foley, Smith and Kill all denied hitting, threatening or making promises to defendant while he was in custody. According to Foley and Smith, Detectives Foley and Byron had a conversation with defendant on July 31, 1987, for about 20 minutes; however, defendant was not in custody at the time and had not been charged with a crime.

The officers also testified that six months later, Detective Smith and his partner, Rusnak, travelled to Dixon, Illinois, and placed defendant in custody based on a murder warrant which had been issued in Chicago. They arrested defendant and advised him of his *Miranda* rights before driving him back to Chicago. They also fed him. When they arrived at the station, at about 4 p.m., defendant was again advised of his *Miranda* rights, indicated he understood those rights and voluntarily spoke to the police. Detective Kill, who took over the investigation at about 5 p.m., stated that he didn't see any signs of injury at that time. About an hour later, Kill reentered the room, handcuffed defendant and moved him to another room where defendant again was given his rights, waived them and gave a statement to Kill about the incident.

At approximately 6:45 p.m. Assistant State's Attorney Kranig arrived at the station, and after speaking to the defendant, he obtained an oral statement which was reduced to a five-page written statement. Kranig testified that defendant agreed to make a statement and he never complained of mistreatment by the police. The last portion of the signed statement indicated that defendant was treated well, given food and drinks, and was not threatened or promised anything.

After counsel presented their arguments and the trial judge heard all of the evidence, he denied defendant's motion to suppress based on the lack of credibility of defendant's testimony. In making his ruling, the trial judge questioned defendant's story about being hit 25 to 50 times by the police, yet defendant failed to tell the assistant State's Attorney about the beatings. The court stated:

> "Well, I think the case boils down to the credibility issue, if the officer did hit him twenty-five to fifty times; that he had to go to the hospital. I have boxed and played football in my younger years. I'm always amazed when I hear these individuals who are hit, slapped and so forth in the police station as much

as they were and the little amount of injuries which are sustained as a result of all these beatings that they have in the police station.

I think the greatest thing the State's Attorney of Cook County did was when they started sending Assistant State's Attorneys over to police stations afterwards. And here we have an Assistant State's Attorney who didn't appear being the [sic] vagus witness I have seen in my life, probably the opposite.

And here he is, he is in with the individual for half an hour. He didn't tell him anything about any beating. He didn't tell anything except he gave a statement. Basically, he says the police [sic] treated him, fine. And he basically says he ate.

The credibility issue here has to completely and totally go in favor of the State. Therefore, your Motion is denied."

Defendant contends since the trial judge's references to his boxing and football experiences and his recollections regarding injuries of past criminal defendants were not subject to cross-examination or the rules of evidence, defendant was denied his constitutional right to due process of law. He argues that while acting under the guise of authority, officers can use both psychological and physical methods to obtain confessions and that police officers when inflicting physical abuse may avoid methods which result in visible signs of injury to defendants. In further support of his argument that the trial judge here was not a fair and impartial jurist, defendant points to another remark made by the judge during *voir dire*. Prior to the jury selection, the public defender objected to the racial composition of the venire on the ground that it did not represent a cross-section of the community since it contained only four African-Americans. When defense counsel remarked that defendant was constitutionally entitled to a jury of his peers, the court asked "[w]ho are his peers?" When counsel replied "[t]he community, the judge inquired, "[p]eople charged with armed robbery and murders?" The judge then denied the motion for a mistrial, stating that there had been no showing of an improper selection in the jury room.

When defendant raises a claim of involuntariness of a confession, the State must establish that the confession was voluntary by a preponderance of the evidence. (*People v. Clark* (1986), 114 Ill. 2d 450, 457, 501 N.E.2d 123.) The test of voluntariness is whether the statement was made freely, voluntarily and without compulsion or inducement of any sort or whether defendant's will was overcome at the time he made the statement. (*People v. Prim* (1872), 53 Ill. 2d 62, 70, 289 N.E.2d 601.) When conflicting evidence is presented, the trial

court resolves the issues of credibility, and a reviewing court will not substitute its judgment for that of the trial court unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Ross* (1985), 132 Ill. App. 3d 553, 558, 478 N.E.2d 27.) The trial court's finding will not be reversed unless such finding is contrary to the manifest weight of the evidence. (*Clark*, 114 Ill. 2d at 457.) The reviewing court, in reaching its determination, may consider evidence presented at the suppression hearing and the evidence adduced during the trial. *People v. Caballero* (1984), 102 Ill. 2d 23, 35-36, 464 N.E.2d 223.

■ In the present case, we find since the trial court's decision is not against the manifest weight of the evidence, its ruling will be affirmed. In *People v. Mackey* (1990), 207 Ill. App. 3d 839, 861, 566 N.E.2d 449, defendant also claimed that he confessed due to police coercion under circumstances in which the police injured his ear. He reported an ear injury two days after being arrested and presented the testimony of the doctor who examined him 10 days after his arrest. Defendant there reported to the doctor that he had been hit by the police, and the examination confirmed an injury to his ear. However, the cause of the injury or when it was inflicted could not be determined. This court refused to reverse the trial court's ruling in *Mackey* that the confession was voluntary.

Strikingly similar to *Mackey*, the defendant here had a witness with a close relationship to him testify on his behalf. His sister Antoinette testified that she heard defendant scream and observed him handcuffed to the wall in the interview room. She also observed that he was bleeding from the nose and mouth. However, Antoinette's testimony contradicted that of the investigating police officers. Further, her testimony was inconsistent with defendant's testimony of injury to his ear. Neither was the doctor who testified for defendant able to see any physical injuries. Unlike the defendant in *Mackey*, who sought medical treatment 10 days following the arrest, the defendant here sought medical treatment within three days of the alleged beating; yet, the doctor was unable to find visible signs of the type of injuries defendant now complains were inflicted upon him by the police.

We recognize that more than a mere denial by the police is required to deny a motion to suppress. (See *People v. Banks* (1989), 192 Ill. App. 3d 986, 549 N.E.2d 766.) In the present case, the police denied beating defendant. There was no evidence of a prompt outcry to other police personnel. The defendant did not complain of mistreatment to the assistant State's Attorney who interviewed him. There was no corroborative medical evidence or physical evidence other than

the perforated eardrum which could have been caused by a number of factors. In addition, defendant did not seek medical treatment until three days after the first alleged beating and presented no corroborative evidence of police coercion after the alleged second beating.

Accordingly, we believe, as in *Mackey*, the defendant has failed to prove that the trial court's ruling was against the manifest weight of the evidence.

■ With respect to the statements made by the trial judge during *voir dire*, we note that the remarks made to counsel outside of the presence of the jury were better left unsaid. However, such statements cannot be said to have any bearing on the propriety of the court's ruling on the motion to suppress. Neither have we found rebuttal in the record to the presumption that the trial court considered only competent evidence when reaching its determination. (See *People v. Phillips* (1989), 127 Ill. 2d 499, 538 N.E.2d 500; *People v. Gilbert* (1977), 68 Ill. 2d 252, 369 N.E.2d 849.) To the contrary, the trial court's discussion centered on the credibility of the witnesses and defendant's testimony and did not violate his right to due process of law.

Defendant next contends that the trial court erred when it refused to grant his motion to dismiss prospective juror Melburn Anglin for cause. Defense counsel argued that Anglin, who was an inspector of police in Country Club Hills, Illinois, had too close a relationship with law enforcement personnel to be impartial. Counsel asserted that Anglin was well acquainted with many judges and attorneys, including one of the prosecuting attorneys in the instant case; that he testified in court often; that he had been a victim of an assault and battery; and that his home had been burglarized. Because Anglin responded he could be fair and impartial to both sides, the judge denied defendant's motion to dismiss him for cause.

■ Defendant then exercised a peremptory challenge to excuse Anglin from the jury. On appeal, defendant has failed to allege that he exhausted his peremptory challenges when he excused Anglin or that an objectionable juror was subsequently forced upon him after he exhausted his peremptory challenges. In the precedential case of *Spies v. People* (1887), 122 Ill. 1, 12 N.E. 865, the trial court had overruled defendant's challenges for cause to jurors. The reviewing court held even if a defendant has exhausted his peremptory challenges, no error will be found unless it is shown that an objectionable juror was forced upon the defendant after he had exhausted his peremptory challenges. Cases following *Spies* have likewise found no reversible error under these factual circumstances, either on the theory of harmless error

(*People v. Harris* (1990), 196 Ill. App. 3d 663, 677, 554 N.E.2d 367), or waiver (*People v. Green* (1990), 199 Ill. App. 3d 927, 929-31, 557 N.E.2d 939; *People v. Washington* (1982), 104 Ill. App. 3d 386, 392, 432 N.E.2d 1020). In each of the foregoing decisions, the court found that, by failing to indicate they were forced to accept an objectionable juror, the defendants denied the trial court the opportunity to cure the alleged error by exercising its inherent power to grant the defense an extra peremptory challenge.

Accordingly, based on the foregoing analysis, we hold that defendant's failure to indicate to the trial court that he was being forced to accept an objectionable juror because of the court's refusal to excuse Anglin for cause denied the court an opportunity to cure the error. We also adopt the rationale and further analysis of this issue found in *People v. Delgado* (1992), 231 Ill. App. 3d 117, 590 N.E.2d 149.

Finally, defendant asserts that he was denied a fair trial because the prosecutor's comments made during closing argument improperly attacked one of the defense witnesses. The record reveals that after talking with Tina Jackson, defendant's ex-common-law wife, on August 13, 1987, Detective Drish obtained a warrant for defendant's arrest. Allegedly, Tina had told the detectives that defendant came to her home on July 28, 1987, and admitted that he and Stewart had killed Watson. However, at trial Tina recanted her testimony. Tina also testified that she was kept in a cage at the station for two days back in 1987 and questioned; however, the officers were unable to fully understand her because she was high on PCP.

During closing argument, the prosecutor commented that Tina Jackson was not to be believed in her attempt to recant an earlier statement. The prosecutor remarked that she was high on PCP at the time of the trial. He stated:

> "We heard Tina Jackson here today. Can we believe anything that Tina Jackson said? We have no idea. That girl didn't know where she was today. She was high on narcotics today as she stood in that witness stand. She didn't know what she was saying. Probably the only time she ever told the truth in her life is on August 13, 1987, when she told the police that 'my boy friend, Tony Robinson, came over to my house with a gun and said, "We killed Charlie Joe, me and Fitzgerald, we killed him. We shot him. We took his money, we took his drugs, and we booked." ' That is the only time Tina Jackson probably ever told anybody the truth."

Defense counsel objected; however, the trial court noted the objection and stated that the jury "heard the evidence."

■■ The State first contends the issue of alleged prosecutorial misconduct is waived on appeal because defendant failed to specifically include the error in his motion for a new trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) A review of the record indicates that counsel objected at trial when the complained-of comments were made; however, he failed to state the specific grounds he now alleges on review. Further, he failed to mention the specific complained-of comments in his post trial motion. We have held that the general allegation of a prejudicial closing argument is too vague to preserve the issue for review. *People v. Buchanan* (1991), 211 Ill. App. 3d 305, 312, 570 N.E.2d 344; *People v. Thomas* (1983), 116 Ill. App. 3d 216, 452 N.E.2d 77.

Accordingly, we hold since defendant failed to include this alleged error in his post-trial motion, he is precluded from raising it on review. Were we to review this issue, nevertheless, we would conclude that the complained-of remarks do not require reversal. A prosecutor is permitted to comment on the credibility of witnesses if the comments are based on the facts of the record or inferences drawn from those facts. (*People v. Flores* (1989), 128 Ill. 2d 66, 94, 538 N.E.2d 481.) When the evidence and Tina's admission of past drug use are considered in conjunction with her trial testimony and behavior, in which she rambled on and on, was often unresponsive to the questions asked and appeared to be unaware of her surroundings, we believe the prosecutor's comments here were proper remarks on the demeanor and credibility of Tina; moreover, they were proper inferences based on her own testimony and behavior exhibited at trial. Further, the jury received instructions telling them that opening and closing statements should not be considered as evidence.

Based upon the foregoing, we affirm defendant's conviction for murder.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.