THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONNELL NOLAN, Defendant-Appellant.

First District (4th Division)   No. 1—95—4390

Opinion filed August 14, 1997.

Michael J. Pelletier and Manuel S. Serritos, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Faustmann, and Elizabeth A. McDevitt, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

On the morning of December 8, 1989, Donnell Nolan (Nolan) entered the Pershing Food and Liquor Store at 857 East 39th Street, to purchase a bottle of pop. The proprietor, Zaki Fakhoury (Fakhoury), accused Nolan of shoplifting. During an altercation, Nolan pulled a loaded gun from his pocket, then shot and killed Fakhoury. The question for the jury to resolve was whether Nolan's actions constituted first degree murder, second degree murder, involuntary manslaughter, or no crime at all.

In his first jury trial, Nolan was found guilty of first degree murder and sentenced to 40 years' imprisonment. That conviction was overturned, because of an instructions error, in a Rule 23 (134 Ill. 2d R. 23) order issued on December 24, 1992. In his second jury trial, Nolan was found guilty of second degree murder and sentenced to 30 years' imprisonment. It is from this judgment that he now appeals. We affirm the defendant's conviction, but we reduce his sentence to 15 years.

## FACTS

Two months after the shooting, on February 8, 1990, Nolan turned himself in to the police. He gave a signed statement to the assistant State's Attorney in which he admitted shooting Fakhoury. Nolan was positively identified in a lineup and at trial by an occurrence witness, Mrs. Willingham. The gun used to shoot Fakhoury was recovered from the home of Nolan's friend, Calvin Brown, who testified at trial.

At trial, the controversy was not whether Nolan shot Fakhoury, but how the shooting occurred.

Mrs. Ann Willingham testified that she was standing in the checkout line in Fakhoury's store at 8:30 a.m. on December 8, 1989, waiting to make her purchases. Nolan entered the store and walked to the back, where the coolers are located. While Nolan was walking down the aisle and looking at the merchandise, Fakhoury watched Nolan in a mirror. Fakhoury spoke to another worker in Arabic and gestured toward Nolan. It was Mrs. Willingham's perception that Fakhoury thought Nolan was shoplifting.

Nolan came to the front of the store and stood in line with a bottle of pop in his hand. Fakhoury came around from behind the counter and began to shout at Nolan, demanding that he "give me what you got." Nolan replied, "I don't have anything." Fakhoury kept advancing toward Nolan while Nolan kept backing up, telling Fakhoury "back off" and "don't keep walking up on me because I don't have nothing."

Fakhoury was not about to give up. He continued to shout at Nolan and grabbed his wrist, trying to draw him toward the front of the store. Nolan tried to pull away from Fakhoury's grasp and said, "Let go of me, let go of me, I told you I didn't have anything."

Mrs. Willingham said she turned away from this confrontation and attempted to finish her transaction. While her back was turned she heard a gunshot. She turned back to see Fakhoury falling to the floor and Nolan walking backwards.

The other store clerk had locked the front door. But, after the shooting, Nolan "jogged to the door" and shook it until it opened. Nolan left the store with the gun still in his hand.

On cross-examination, Mrs. Willingham said she never saw Fakhoury try to reach into Nolan's pockets. She said that Fakhoury was just "grabbing—snatching, tugging" at Nolan while Nolan was trying to get loose.

In a written statement given to Assistant State's Attorney (ASA) Holmes, Nolan said he entered the store with two loaded handguns in his jacket pockets. He got a bottle of pop out of the cooler in the back of the store and then came to the front checkout. Fakhoury came up to him, grabbed his left arm, and started to shout at him, "Give it back." Nolan said Fakhoury would not let go of his arm and was trying to search his pockets. Nolan pulled a .38-caliber snub nose out of his right pocket and shot the man one time in the chest. Nolan also told ASA Holmes he "wanted the man to let go because the Arabs are always grabbing on black men in the store, and he did not want to be searched because he did not steal anything."

When ASA Holmes testified about interviewing the defendant and taking this statement, she did not recall Nolan saying that there had been a struggle over the gun. Her recollection was that Nolan said Fakhoury grabbed Nolan while accusing Nolan of shoplifting. Nolan's pockets were bulging due to the guns. Nolan pulled out a gun to show Fakhoury that he had guns, not merchandise. When Fakhoury would not let go of Nolan, Nolan stepped back and shot Fakhoury.

ASA Holmes also testified that while she wrote out Nolan's statement, he was looking at the paper and making corrections or changes. After she finished the written statement, Nolan read it out loud, made some corrections, then signed it.

Detective Redmond testified that he was present at Area 1 headquarters when Nolan turned himself in. He arrested Nolan and handcuffed him to the wall of an interview room. Although Nolan turned himself in because he knew the police were looking for him in connection with the shooting, Detective Redmond testified that Nolan initially denied being involved in the shooting.

Mrs. Willingham was brought to headquarters and identified Nolan in a lineup. Detective Redmond then informed Nolan that he had been identified. After receiving this information, Nolan agreed to speak to the assistant State's Attorney and admitted his part in the shooting.

Nolan's trial testimony about the occurrence was similar to his written statement, with one major exception. He said at trial that Fakhoury came around the counter and demanded that he "give it back." Fakhoury then grabbed Nolan's arm and tried to reach into his pockets where he had the guns concealed. Nolan said he pulled one gun out to show Fakhoury that he had a gun and not merchandise in his pocket. Then, he said, he "cocked" the gun and "in the tussle" with Fakhoury "[his] hand was on the trigger and it just went off." Nolan described the "tussle" as Fakhoury trying to grab at him, reaching into his pockets, and grabbing at the gun. He said he did not intend for the gun to go off. Nolan's written statement did not include his claim that the gun went off when Fakhoury grabbed at the gun.

On cross-examination, Nolan admitted that Fakhoury was unarmed and Fakhoury did not threaten or hit him. Nolan said he pulled out the gun and showed it to Fakhoury, thinking that it would "make him let me go." He admitted that he deliberately cocked the gun and held the gun with his finger on the trigger, but he contended that the trigger was pulled and the gun went off accidentally because Fakhoury came at him, trying to take the gun away.

When asked whether he ever told ASA Holmes that the gun went off accidentally because Fakhoury was grabbing for it, Nolan said, "I don't recall." The prosecutor then asked whether Nolan told ASA Holmes, as it said in the statement, that he just pulled out the gun and shot Fakhoury in the chest. Nolan said, "I don't recall that. It's been almost 5 years."

Having heard all of the evidence, the jury was instructed on the elements of first degree murder, second degree murder, and involuntary manslaughter. The jury found Nolan guilty of second degree murder. Nolan later was sentenced to an extended term of 30 years.

DECISION

In his first issue on appeal, defendant claims he was denied the right to fully present a defense because he was prohibited from eliciting testimony from Detective Redmond concerning what he characterizes as a "prior consistent statement."

The trial court ruled, on hearsay grounds (see *People v. Barnwell*, 285 Ill. App. 3d 981, 675 N.E.2d 148 (1996); *People v. Young*, 206 Ill. App. 3d 789, 811, 564 N.E.2d 1254 (1990)), that Nolan could not ask Detective Redmond about oral statements Nolan may have made in the presence of Redmond and ASA Holmes that were not contained in Nolan's signed, written statement. The trial court also ruled, however, that if Nolan testified that he made such statements, Detective Redmond could be called to corroborate Nolan's testimony.

Nolan now contends that he should have been allowed to question Detective Redmond to determine whether the detective recalled Nolan saying that Fakhoury was shot in a struggle over the gun. The detective's testimony, says defendant, was admissible to counter the State's argument of recent fabrication and admissible under the completeness doctrine.

Though defense counsel did not raise these specific claims in his posttrial motion, Nolan now contends the court's restriction on the cross-examination of Detective Redmond was plain error. We disagree.

If we ignore the fact that this issue was not properly preserved (*People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988)), the issue fails on its merits.

■ When the defendant is the declarant of an out-of-court statement and available to testify in his own behalf, the self-serving or exculpatory statement made to police while in custody is considered unreliable and may be excluded on hearsay grounds (*People v. Barnwell*, 285 Ill. App. 3d 981, 675 N.E.2d 148 (1996)), unless one of the exceptions to the general rule against admission of hearsay applies.

■ In this case, the trial court should have allowed defense counsel to question Detective Redmond about oral statements Nolan may have made. Detective Redmond was present while ASA Holmes prepared Nolan's written statement. Under the completeness doctrine (see *People v. Hosty*, 146 Ill. App. 3d 876, 884, 497 N.E.2d 334 (1986)), Nolan should have been able to test the accuracy of the written statement. The trial court allowed Nolan to question ASA Holmes about matters that she may have left out of the written statement. We see no reason why a different standard should have applied to Detective Redmond.

There was no reason to condition asking Detective Redmond the pertinent question on Nolan first testifying to the sought-after statement. The purpose of the rule of completeness is to correctly convey the true meaning of a statement to the triers of fact. *People v. Weaver*, 92 Ill. 2d 545, 556, 442 N.E.2d 255 (1982). Completeness may be accomplished through cross-examination of witnesses who were present at the time of the statement. *People v. Williams*, 109 Ill. 2d 327, 334, 487 N.E.2d 613 (1985). The testimony sought from Redmond was limited to the same subject at the same time and at the same place. The question should have been allowed.

■ But there is an inherent problem with defendant's contention that this constitutes reversible error: defendant failed to establish that a "prior consistent statement" existed.

ASA Holmes testified that she did not recall being told that Fakhoury was shot in a struggle over the gun. ASA Holmes recalled being told that Nolan was trying to get away from Fakhoury and kept backing up. Nolan shot Fakhoury because he would not let go. This is what was reported in the written statement she prepared and which, Nolan admitted, he reviewed and signed after making corrections.

It is clear that Nolan did not establish he ever told Detective Redmond or ASA Holmes about a struggle over the gun. In his own trial testimony, Nolan said he could "not recall" if he said this. No offer of proof was made to show that Detective Redmond would have recalled such a statement. For this reason, it is mere speculation that Detective Redmond would have been able to testify to a "prior consistent statement" by Nolan. We will not reverse Nolan's conviction for reasons based on speculation.

■ In his second issue, Nolan contends that his conviction should be reversed because of comments made by the prosecutor in closing argument. He claims that the prosecutor vouched for his witnesses' credibility, misstated facts, and misstated law.

Defendant objected to only two of these errors at trial and failed to specify the objectionable remarks in the posttrial motion. The is-

sue is not preserved for review. *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988). Though defendant raised a generic claim of improper closing argument, no specific examples of misconduct were illustrated. This constitutes a waiver of the issue on appeal. *People v. Robinson*, 238 Ill. App. 3d 48, 606 N.E.2d 122 (1992).

Nor does plain error defeat the waiver here. Prosecutors are afforded substantial latitude in closing argument. *People v. Pecoraro*, 144 Ill. 2d 1, 16, 578 N.E.2d 942 (1991). Even when improper, prosecutorial remarks will not warrant reversal unless they result in substantial prejudice to the defendant. *People v. Sims*, 285 Ill. App. 3d 598, 673 N.E.2d 1119 (1996).

As required, we have reviewed each of the complained-of comments in context of the closing remarks as a whole. *People v. Alvine*, 173 Ill. 2d 273, 671 N.E.2d 713 (1996); *People v. Thompkins*, 121 Ill. 2d 401, 445, 521 N.E.2d 38 (1988).

Nolan claims the prosecution vouched for the veracity of its key witness, ASA Holmes. But the transcript reveals what the prosecutor said:

> "And you know that's not what he said from the testimony of Detective Redmond and the testimony of Pat Holmes. And you can judge their demeanor and their testimony and what they saw and what they heard from the defendant. He didn't say that once. Pat Holmes was telling the truth to what he said. His own statements tell you the truth."

It is clear to us the prosecutor was not expressing his personal belief in the witness's veracity, but was asking the jury to judge the witness's veracity based on demeanor and the other evidence presented. See *People v. Wheeler*, 216 Ill. App. 3d 609, 575 N.E.2d 1326 (1991). It is fair comment on the evidence to argue that witnesses are believable because of their demeanor and because they have been corroborated. *People v. Nitz*, 143 Ill. 2d 82, 572 N.E.2d 895 (1991).

The remaining remarks are equally inoffensive and need not be discussed. Most of the complained-of comments were made in rebuttal argument and were either provoked or invited by the defense. As such, they were permissible comments directly related to the evidence or reasonable inferences drawn from the evidence. There was no error.

■ The final claim on appeal is that the trial court abused its discretion when it imposed the maximum extended-term sentence of 30 years' imprisonment on Nolan. Although Nolan did not object to the sentence imposed at the sentencing hearing, and did not file a

written motion for review of the sentence within 30 days in accord with the statutory provision (730 ILCS 5/5—8—1(c) (West 1996)), we are not compelled to apply the waiver rule when we see plain error. *People v. McCleary*, 278 Ill. App. 3d 498, 663 N.E.2d 22 (1996).

Defendant acknowledges his eligibility for an extended-term sentence based on his two prior felony convictions: residential burglary and possession of a stolen motor vehicle. However, a defendant's eligibility for an extended term does not require that result. *People v. Taylor*, 278 Ill. App. 3d 696, 663 N.E.2d 1126 (1996). It is left to the trial court's sound discretion to determine whether an extended term sentence should be imposed.

Nolan complains that his 30-year sentence, which is the maximum extended sentence that could be imposed, is excessively harsh, motivated by vindictiveness, and an abuse of discretion. He has a point.

As the defendant contends, the "factual matrix surrounding the shooting" does not warrant a 30-year prison term. It is clear that Fakhoury was the aggressor in the encounter with Nolan. The evidence consistently showed that Nolan was attempting to back away from the encounter and extract himself from the situation. The shooting was not an act of plan or premeditation. Although Nolan was unable to prove Fakhoury reached for the gun and the gun went off accidentally, this was a close case and Nolan carried his burden of proving mitigating factors that reduced the offense to second degree murder.

Though Nolan's two prior felonies make him eligible for an extended term, neither one of the two prior felonies indicates that Nolan is a dangerously aggressive criminal.

After his first trial in which he was found guilty of first degree murder, Nolan was sentenced to 40 years' imprisonment. This was not the maximum sentence available. No extended-term sentence was given, although Nolan was eligible. Yet, when defendant was retried and found guilty of second degree murder, which carries a maximum penalty of 15 years, an extended-term sentence of 30 years was imposed—just 10 years less than the sentence imposed earlier.

Under these circumstances, the sentence amounts to an abuse of discretion. See *People v. Andrews*, 132 Ill. 2d 451, 548 N.E.2d 1025 (1989). On the authority granted us by Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), we reduce the defendant's sentence to 15 years.

CONCLUSION

For the reasons stated, the defendant's conviction is affirmed. His sentence is reduced to 15 years.

Affirmed as modified.

CERDA and BURKE, JJ., concur.