768 N.E.2d 108 (2002)
329 Ill. App.3d 639
263 Ill.Dec. 348
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Cayetano MARSH, Defendant-Appellant.
No. 1-00-1646.
Appellate Court of Illinois, First District, Second Division.
March 29, 2002.
*109 Rita A. Fry, Public Defender of Cook County (Robert D. Swartz, Assistant Public Defender, of counsel), Chicago, for Appellant.
Richard A. Devine, State's Attorney of Cook County (Renee Goldfarb, Kenneth T. McCurry, Katherine Blakey Cox, Assistant State's Attorneys, of counsel), Chicago, for Appellee.
Presiding Justice BURKE delivered the opinion of the court:
Defendant Cayetano Marsh appeals from an order of the circuit court entering judgment upon a jury's verdict finding him guilty of failing to report a change of his address in compliance with the Sex Offender Registration Act (Act) (730 ILCS 150/6 (West Supp.2000)) and sentencing him to four years' imprisonment. On appeal, defendant contends that the penalty *110 provision of the Act violates substantive due process, double jeopardy, and the proportionate penalties clause of the Illinois Constitution (Ill. Const.1970, art. I, § 11). Defendant also contends that the trial court abused its discretion in sentencing him to four years' imprisonment. For the reasons set forth below, we affirm, but modify defendant's sentence.

STATEMENT OF FACTS
On February 11, 1987, defendant pled guilty to aggravated criminal sexual assault and was sentenced to nine years' imprisonment. Defendant was released in November 1990.[1] On November 14, 1996, defendant pled guilty to the offense of burglary. He was paroled on December 5, 1997, and, at this time, he was notified of his obligation to register as a sex offender pursuant to the Act. Thereafter, on December 9, 1997, defendant registered his address as 1759 North Humboldt in Chicago. Defendant was subsequently imprisoned in August 1998 for a parole violation and released on May 14, 1999. Following this discharge from custody, defendant failed to report a change of his residence with the local authorities. At this time, because his mother had been evicted from the apartment at 1759 North Humboldt, defendant began staying with a friend at 1758 North Humboldt.
On August 28, 1999, defendant was arrested in an unrelated matter and the police discovered that he was an unregistered sex offender. An indictment was subsequently returned, charging defendant with the offense of failing to report a change of his address in compliance with the Act. On April 4, 2000, following a trial, the jury returned a verdict, finding defendant guilty of failing to change his address pursuant to the Act. Thereafter, the trial court conducted a sentencing hearing, in which it heard evidence in aggravation and mitigation. The State sought an extended-term sentence based on defendant's prior burglary conviction, his background, and the threat he posed to society. Defendant presented evidence in mitigation, arguing that the burglary conviction was insufficient to support an extended-term sentence, that he only moved across the street, not next door to children, and the fact he had not worked was due to a disabilityhe had only one leg. Defendant spoke on his own behalf, stating that he merely forgot to report a change of address and the place he was staying at was temporary. It was his belief that he had been trying to live a clean life and follow the law since his release.
In fashioning defendant's sentence, the court first noted that defendant had a criminal history that ranged over one-half of his life, including three felonies. The court further noted that this was defendant's fourth felony. Because of the burglary conviction, defendant was eligible for an extended-term sentence. With respect to defendant's ability to work, the court stated that the economy was such that people were begging other people to work and one need not be able-bodied to find employment. Additionally, the court found that defendant was a "very intelligent person" who had gone to a "magnet" school, had earned his GED, and had 32 hours of college credit. However, it was the court's belief that defendant had lost an interest in complying with the law, just as he had lost interest in school. The trial court then sentenced defendant to an extended term of four years' imprisonment. This appeal followed.

*111 ANALYSIS
Pursuant to section 3(b) of the Act, within 10 days of establishing a residence for more than 10 days, a sex offender is required to register pursuant to the provisions of the Act set forth in paragraph (a) of section 3. 730 ILCS 150/3(b) (West Supp.2000). Under section 6, if one has a duty to register under the Act and he changes his residence, he is required to inform the law enforcement agency with whom he is registered, within 10 days, of his new address. 730 ILCS 150/6 (West 1998). An offender is required to register for 10 years following release from confinement. 730 ILCS 150/7 (West 1998). The penalty for violating the Act is a Class 4 felony, carrying a sentence of one to three years. 730 ILCS 150/10 (West 1998). Under section 10, the trial court is required, at a minimum, to sentence a defendant convicted under the Act to seven days in jail and fine him $500.

I. Constitutionality of Act
Defendant contends that the penalty provision of the Act is unconstitutional because it violates due process, double jeopardy, and the proportionate penalties clause of the Illinois Constitution (Ill. Const.1970, art. I, § 11).
"Statutes are presumed constitutional, and a party challenging the constitutionality of a statute has the burden of establishing its invalidity." People v. Wright, 194 Ill.2d 1, 24, 251 Ill.Dec. 469, 740 N.E.2d 755 (2000). Because the legislature is "`more aware of the evils confronting our society and therefore is more capable of measuring the seriousness of various offenses,' [citation] * * * courts are reluctant to invalidate penalties established by the legislature." People v. Lombardi, 184 Ill.2d 462, 469, 235 Ill.Dec. 478, 705 N.E.2d 91 (1998). Therefore, it is this court's duty to construe a statute so as to affirm its "constitutionality and validity, if reasonably possible." People v. Shephard, 152 Ill.2d 489, 498, 178 Ill.Dec. 724, 605 N.E.2d 518 (1992).
While several cases have addressed the constitutionality of the Act,[2] under various theories, and have upheld its constitutionality, these cases address the registration and notification provisions of the Act, not the penalty provision. Nonetheless, challenges have been upheld based upon cruel and unusual punishment under the eighth amendment (People v. Malchow, 193 Ill.2d 413, 424, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000); People v. Adams, 144 Ill.2d 381, 387-88, 163 Ill.Dec. 483, 581 N.E.2d 637 (1991) (former version of act); People v. Guillen, 307 Ill.App.3d 35, 38, 240 Ill.Dec. 470, 717 N.E.2d 563 (1999); People v. Malchow, 306 Ill.App.3d 665, 670-71, 239 Ill. Dec. 664, 714 N.E.2d 583 (1999); People v. Adams, 198 Ill.App.3d 74, 80, 144 Ill.Dec. 402, 555 N.E.2d 761 (1990) (former version of act)), disproportionate penalty under the eighth amendment (Adams, 144 Ill.2d at 389, 163 Ill.Dec. 483, 581 N.E.2d 637; Adams, 198 Ill.App.3d at 83, 144 Ill.Dec. 402, 555 N.E.2d 761), equal protection (Adams, 144 Ill.2d at 392, 163; Ill.Dec. 483, 581 N.E.2d 637; Adams, 198 Ill.App.3d at 85, 144 Ill.Dec. 402, 555 N.E.2d 761), substantive due process (Adams, 144 Ill.2d at 390, 163 Ill.Dec. 483, 581 N.E.2d 637; People v. Fuller, 324 Ill.App.3d 728, 734, 258 *112 Ill.Dec. 273, 756 N.E.2d 255 (2001); Malchow, 306 Ill.App.3d at 673, 239 Ill.Dec. 664, 714 N.E.2d 583; Logan, 302 Ill. App.3d at 323, 235 Ill.Dec. 539, 705 N.E.2d 152; Adams, 198 Ill.App.3d at 84, 144 Ill. Dec. 402, 555 N.E.2d 761), ex post facto law (Malchow, 193 Ill.2d at 419, 250 Ill. Dec. 670, 739 N.E.2d 433; Guillen, 307 Ill.App.3d at 38, 240 Ill.Dec. 470, 717 N.E.2d 563; Malchow, 306 Ill.App.3d at 669, 239 Ill.Dec. 664, 714 N.E.2d 583; Logan, 302 Ill.App.3d at 331-32, 235 Ill.Dec. 539, 705 N.E.2d 152; People v. Starnes, 273 Ill.App.3d 911, 914-15, 210 Ill.Dec. 417, 653 N.E.2d 4 (1995) (former version of act)), and double jeopardy (Malchow, 193 Ill.2d at 426, 250 Ill.Dec. 670, 739 N.E.2d 433; Guillen, 307 Ill.App.3d at 38, 240 Ill.Dec. 470, 717 N.E.2d 563; Malchow, 306 Ill.App.3d at 671-72, 239 Ill.Dec. 664, 714 N.E.2d 583).
What can be gleaned from these cases, however, are some general conclusions. First, is the purpose of the Act. The purpose of the Act was espoused by the appellate court in Adams. In Adams, the court looked to legislative comments, wherein the sponsor of the bill stated that it was "one of the most important Bills * * * in regards to protecting our children" (84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 208), and was designed to "help law enforcement agencies stop this kind of carnage on our children" (84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 208). The Adams court concluded that:
"Such statements are a clear indication that the purpose of the statute is to aid law enforcement in preventing future sex offenses against children." Adams, 198 Ill.App.3d at 80, 144 Ill.Dec. 402, 555 N.E.2d 761.
See also Adams, 144 Ill.2d at 386, 163 Ill.Dec. 483, 581 N.E.2d 637. According to the Adams appellate court, there was no indication in the legislative history "that the registration requirement was intended to serve the purpose of deterrence or retribution, two goals of punishment." Adams, 198 Ill.App.3d at 80, 144 Ill.Dec. 402, 555 N.E.2d 761. See also Adams, 198 Ill. App.3d at 84, 144 Ill.Dec. 402, 555 N.E.2d 761 (reiterating that the purpose of the Act was to protect children from sex offenders and to aid law enforcement agencies in doing so); People v. Taylor, 203 Ill.App.3d 636, 638, 149 Ill.Dec. 115, 561 N.E.2d 393 (1990) (the Act was promulgated for the protection of the general public from those prone to sex offenses). According to the supreme court, the Act was an additional method to protect children from the increase of sex offenses against them and was designed to aid law enforcement agencies by allowing them to monitor the movements of offenders and allowing them ready access to crucial information. Adams, 144 Ill.2d at 387-88, 163 Ill.Dec. 483, 581 N.E.2d 637. See also Logan, 302 Ill.App.3d at 328, 235 Ill.Dec. 539, 705 N.E.2d 152. The Adams appellate court further found that the purpose served by the act was "so fundamental as to outweigh any penal effect that the statute might have." Adams, 198 Ill.App.3d at 80, 144 Ill.Dec. 402, 555 N.E.2d 761.
Second, the courts have steadfastly held that the Act is not punitive or penal. Malchow, 193 Ill.2d at 426, 250 Ill.Dec. 670, 739 N.E.2d 433 (Act not punitive); Malchow, 306 Ill.App.3d at 672, 239 Ill.Dec. 664, 714 N.E.2d 583 (registration and notification requirements not penal); Starnes, 273 Ill.App.3d at 914-15, 210 Ill.Dec. 417, 653 N.E.2d 4 (registration is a collateral consequence of the underlying conviction for a sex offense); Taylor, 203 Ill.App.3d at 638, 149 Ill.Dec. 115, 561 N.E.2d 393 (the Act is not penal in nature). Third, and similarly, the courts have held that registration and notification do not constitute punishment. Malchow, 193 Ill.2d at *113 419, 250 Ill.Dec. 670, 739 N.E.2d 433; Adams, 144 Ill.2d at 387, 389, 163 Ill.Dec. 483, 581 N.E.2d 637; Logan, 302 Ill. App.3d at 329, 235 Ill.Dec. 539, 705 N.E.2d 152; Starnes, 273 Ill.App.3d at 914, 210 Ill.Dec. 417, 653 N.E.2d 4; Adams, 198 Ill.App.3d at 75, 144 Ill.Dec. 402, 555 N.E.2d 761.
Lastly, the courts have uniformly held that the Act serves a legitimate purpose, that the Act is reasonably related to that purpose, and that the method employed under the Act is not unreasonable. Specifically, in Adams, the appellate court held that the means chosen by the legislature were rationally related to a legitimate government interest; specifically, the registration requirement allowed authorities to keep "abreast" of potential threats to children that might exist due to the presence of the offender. Adams, 198 Ill.App.3d at 85, 144 Ill.Dec. 402, 555 N.E.2d 761. The Adams supreme court agreed with this conclusion, finding that the public interest in aiding law enforcement agencies in protecting children and by providing them ready access to information was not unreasonable. Adams, 144 Ill.2d at 390, 163 Ill.Dec. 483, 581 N.E.2d 637. See also Fuller, 324 Ill.App.3d at 734, 258 Ill.Dec. 273, 756 N.E.2d 255 (the Act is reasonably related to the public interest in protecting children and the method employed is not unreasonable); Malchow, 306 Ill.App.3d at 673, 239 Ill.Dec. 664, 714 N.E.2d 583 (there is a direct relationship served by the Act in protecting the public and there is nothing unreasonable about the method of serving that purpose).

A. Substantive Due Process
Defendant first argues that the classification of an offense under the Act as a Class 4 felony violates the due process clause of the Illinois Constitution (Ill. Const., 1970, art. I, § 2) because such classification bears no rational relation to the legislative intent of the Act. Defendant maintains that there is no victim in the offense, and, therefore, the penalty is excessive.
The State contends that defendant's argument has already been rejected by the Illinois Appellate Court and Supreme Court, which have concluded that the Act is rationally related to the State's interest in protecting the public and aiding law enforcement authorities in doing so.[3] The State further maintains that defendant cannot invoke the due process clause because the Act does not deprive him of liberty or property. The State further argues that a Class 4 classification is reasonable because compliance with the Act is easy, but enforcement of the Act is difficult. Additionally, according to the State, deterrence is the key to the Act and, if the offense was less, deterrence would be lost.
The due process clause provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Ill. Const.1970, art. I, § 2. "Pursuant to its police power, the legislature has wide discretion to establish penalties for criminal offenses, but this discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law." Wright, 194 Ill.2d at 24, 251 Ill.Dec. 469, 740 N.E.2d 755. "Applying the rational basis test, legislation attacked on due process grounds will be upheld if that legislation is rationally related to a legitimate legislative purpose and is not arbitrary." People v. Kolzow, 319 Ill.App.3d 673, 677, 253 Ill. Dec. 785, 746 N.E.2d 27 (2001). "The only question raised by a due process challenge to the penalty imposed by a criminal statute *114 is whether the challenged penalty is `reasonably related to the purpose of the statute containing the penalty.' [Citations.]" People v. Cosby, 305 Ill.App.3d 211, 225, 238 Ill.Dec. 513, 711 N.E.2d 1174 (1999). See also Lombardi, 184 Ill.2d at 471, 235 Ill.Dec. 478, 705 N.E.2d 91. Stated another way, "[a] penalty prescribed for a certain offense satisfies the requirements of due process so long as it is `reasonably designed to remedy the evils that the legislature has determined to be a threat to the public health, safety, and general welfare.' [Citation.]" Lombardi, 184 Ill.2d at 469, 235 Ill.Dec. 478, 705 N.E.2d 91.
Defendant contends that the rationale of People v. Hamm, 149 Ill.2d 201, 172 Ill. Dec. 179, 595 N.E.2d 540 (1992), and People v. Morris, 136 Ill.2d 157, 143 Ill.Dec. 300, 554 N.E.2d 235 (1990), applies to our analysis. The State distinguishes Hamm and Morris, arguing that in the instant case, unlike those cases, the Act and its application to defendant do further the purpose of the Actit helps to protect and aid enforcement.
In Morris, the defendant was convicted of possession of an altered temporary registration permit, a Class 2 felony (three to seven years).[4]Morris, 136 Ill.2d at 160, 143 Ill.Dec. 300, 554 N.E.2d 235. The defendant contended that the penalty, as a Class 2 offense, violated due process. The Morris court first noted the general rules with respect to constitutional challenges and stated that "`unless the challenged penalty is clearly in excess of the very broad and general constitutional limitations' [citation]," it would be upheld. Morris, 136 Ill.2d at 161, 143 Ill.Dec. 300, 554 N.E.2d 235. With respect to the due process issue, the Morris court determined that the purpose of the act before it was anti-theft, i.e., to protect automobile owners and the general public against crimes involving stolen automobiles. Morris, 136 Ill.2d at 162, 143 Ill.Dec. 300, 554 N.E.2d 235. The Morris defendant had altered his own permit, and there was no evidence that the defendant's alteration contributed to any vehicle-theft-related crime. The Morris court therefore held that the penalty provision violated due process. According to the court, a Class 2 penalty for alteration of one's own permit was not reasonably designed to protect automobile owners against theft, nor was it reasonably designed to protect the public. Morris, 136 Ill.2d at 162, 143 Ill.Dec. 300, 554 N.E.2d 235. The court further found that there was no relationship between the offense of altering one's own permit and the purpose of protecting other automobile owners or the general public against crimes involving stolen vehicles. Morris, 136 Ill.2d at 168, 143 Ill.Dec. 300, 554 N.E.2d 235.
In Hamm, the defendants were convicted of failure to have tags on their fishing nets and failure to have their commercial fishing licenses in their possession, a Class 3 felony. Hamm, 149 Ill.2d at 215, 172 Ill.Dec. 179, 595 N.E.2d 540. The defendants challenged the penalty on the basis of due process. Hamm, 149 Ill.2d at 215, 172 Ill.Dec. 179, 595 N.E.2d 540. The Hamm court concluded that the purpose of the act was to prevent the widespread poaching of wildlife (Hamm, 149 Ill.2d at 216, 172 Ill.Dec. 179, 595 N.E.2d 540), and to prevent the widespread destruction of our natural resources (Hamm, 149 Ill.2d at 218, 172 Ill.Dec. 179, 595 N.E.2d 540). According to the court, the legislature intended to "punish and inhibit those actions which assist or result in the illegal widespread *115 destruction of natural resources." Hamm, 149 Ill.2d at 218, 172 Ill.Dec. 179, 595 N.E.2d 540. However, with respect to the offenses before it, the Hamm court stated:
"We do not believe that having a tag on a net evincing that the net is licensed, or a license in one's immediate possession while fishing as proof that the individual was licensed, assists or results in the illegal widespread destruction of the State's resources." Hamm, 149 Ill.2d at 218, 172 Ill.Dec. 179, 595 N.E.2d 540.
Accordingly, the Hamm court held that the failure to have a tag on one's net or license in one's possession was not reasonably designed to protect Illinois citizens from depletion of their natural resources (Hamm, 149 Ill.2d at 218, 172 Ill.Dec. 179, 595 N.E.2d 540) and, therefore, the penalty violated due process.
Defendant essentially relies on these cases in arguing that his offense was victimless and, thus, a Class 4 penalty violates due process. We disagree because we do not believe this offense is truly victimless. In Hamm and Morris, there was no victim and no potential ever for a victim to ensue as a result of a violation of either statute. However, in the instant case, while we acknowledge there was no victim in defendant's case, there clearly is a likelihood for victims to ensue where a defendant violates this Act. Specifically, when a defendant fails to register and authorities therefore cannot monitor his movements and whereabouts, he is free to commit sexual offenses without possible detection. Thus, the victims who might ensue as a result of a past offender's failure to register under the Act are the potential victims of future sex offenses. Moreover, the purpose of the Act in the first place is to prevent victims from coming into existence. Accordingly, Hamm and Morris are distinguishable on the basis of the nature of the offenses at issue; in the instant case, the failure of defendant to notify law enforcement authorities of a change in address, in Morris, the defendant's alteration of a temporary registration permit, and in Hamm, the defendants' failure to have tags on their fishing nets and their commercial fishing licenses in their possession.
More importantly, however, the penalty in the instant case is reasonably related to the purpose of the Act and is reasonably designed to remedy an evil and further the purpose of the Act, unlike the offenses and penalties in Morris and Hamm. Again, the purpose of the Act is to protect the general public from sex offenders and to aid law enforcement agencies in doing so. The legislature has determined that such offenders pose a threat to society and, even more so, when law enforcement authorities cannot locate or monitor an offender's whereabouts. The legislature has concluded that the offense of failing to register or to notify authorities of a change of address under the Act is serious enough to warrant a felony classification. Because the offense previously carried a misdemeanor classification and the legislature raised the classification, we must conclude that the prior classification was insufficient to serve the purpose of aiding law enforcement agencies or protecting the public since too many individuals failed to comply with the registration requirement. Specifically, the legislature must have concluded that the felony classification was necessary to "halt an upsurge in [the] frequency [of] the offense" and offenses attendant therefrom. People v. Kauten, 324 Ill.App.3d 588, 590, 258 Ill.Dec. 197, 755 N.E.2d 1016 (2001). While the registration and notification provisions of the Act are not designed to serve the purpose of deterrence, a penalty provision nonetheless does take into account that purpose. See, e.g., People v. Hernandez, 319 Ill.App.3d 520, 529, 253 Ill.Dec. *116 550, 745 N.E.2d 673 (2001) (factors in fashioning an appropriate sentence include deterrence and protection of the public); People v. Rader, 272 Ill.App.3d 796, 807, 209 Ill.Dec. 330, 651 N.E.2d 258 (1995) (the need to deter similar conduct in the future is an appropriate factor in fashioning a sentence); People v. Morrison, 260 Ill. App.3d 775, 800, 198 Ill.Dec. 586, 633 N.E.2d 48 (1994) (deterrence is a legitimate concern in imposing a sentence). While all of the above cases relate to a trial court's sentencing of a defendant, it is nonetheless clear that deterrence is a factor in establishing and imposing a sentence. See People v. Stork, 305 Ill.App.3d 714, 722, 238 Ill.Dec. 941, 713 N.E.2d 187 (1999) ("If a group of persons creates a greater danger to the public, then it is reasonable to deter those persons by a statute reasonably designed to remedy the threat to the public safety").
Based on the foregoing, we conclude that the legislature could reasonably have determined that a Class 4 felony classification was necessary to achieve its objective in enacting the Act to protect individuals from sex offenders and to aid law enforcement authorities in doing so. Such a classification is rationally related to the purpose of the Act. Accordingly, we conclude that defendant has failed to satisfy his burden of demonstrating that the Class 4 penalty violates due process.

B. Double Jeopardy
Defendant next argues that his four-year sentence for violating the Act is punitive as applied to him and, therefore, violates double jeopardy. According to defendant, we must apply the analysis used to determine whether a provision is punitive despite the legislature's intent. Defendant maintains that his sentence clearly constituted punishment because it far exceeded (by two years) the time in which he was required to register under the Act. Ultimately, defendant maintains that he is really being punished for the underlying offense of being convicted as a sex offender and not for his failure to report a change of his address. According to him, the Act violates double jeopardy to the extent that the "sentence is in any way related to his previous conviction."
The State contends that defendant's sentence was imposed on the jury's verdict finding defendant guilty of failing to report a change of his address, not for the underlying crime and, therefore, double jeopardy is not implicated. The State cites numerous cases that have upheld the Act on double jeopardy challenges.[5]
The double jeopardy clause protects against "multiple punishments for the same offense." People v. Ortiz, 196 Ill.2d 236, 252, 256 Ill.Dec. 530, 752 N.E.2d 410 (2001).
Initially, we disagree with defendant that we must apply the analysis used to determine if a provision is punitive despite legislative intent. Defendant is challenging the penalty provision of the Act. A penalty clearly constitutes punishment and is punitive by its inherent nature. Thus, defendant's argument is circular and does not require this court's analysis.
The only question here is whether defendant's four-year sentence was actually imposed for his underlying conviction of aggravated criminal sexual assault. If the sentence was not imposed for the underlying conviction, then no double jeopardy violation exists. After reviewing the transcript from the sentencing hearing, we conclude that there is no evidence demonstrating that the trial court sentenced despread *117 for his prior sex offense conviction. While the court did note defendant's prior conviction, its decision was solely based on defendant's current felony, his fourth felonyhis failure to comply with the law requiring that he report a change of his address under the Act. Accordingly, we find no double jeopardy violation.

C. Proportionate Penalties Clause
Defendant next contends that the penalty provision of the Act violates the proportionate penalties clause of the Illinois Constitution, arguing that the provision is cruel, degrading, or shocking to the moral sense. Defendant argues that he received a significant sentence for a minor offense.
The State contends that a Class 4 classification is reasonable in light of the difficulty in enforcing the Act and the need for a penalty that has a strong deterrent effect. Additionally, the State maintains that the penalty is reasonable in light of the need to prevent harm, which is the underlying purpose of the Act.
Defendant responds that if the goal of the Act is registration and not incarceration, then making a technical violation of the Act a Class 4 felony is excessive. Defendant argues that his offense was minor because he merely failed to report a change of his address, rather than that he failed to register in the first instance.
The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined * * * according to the seriousness of the offense." Ill. Const.1970, art. I, § 11. A challenge under this clause may be made on any one of three bases, only one of which is raised here: "`a penalty violates the proportionate penalties clause if it is cruel, degrading or so wholly disproportionate to the offense committed as to shock the moral sense of the community.' [Citation.]" Cosby, 305 Ill.App.3d at 225, 238 Ill.Dec. 513, 711 N.E.2d 1174. In other words, we must look at the gravity of the particular offense in connection with the severity of its sentence. People v. Davis, 177 Ill.2d 495, 502, 227 Ill.Dec. 101, 687 N.E.2d 24 (1997). "In determining the seriousness of a given offense, the legislature may consider not only the degree of harm the offense inflicts but also the frequency of the crime and the need for a more stringent penalty to halt an upsurge in its frequency." Kauten, 324 Ill.App.3d at 590, 258 Ill.Dec. 197, 755 N.E.2d 1016. See also People v. Lee, 167 Ill.2d 140, 146, 212 Ill.Dec. 231, 656 N.E.2d 1065 (1995) (the legislature may perceive a need to enact a more stringent penalty provision to halt the increase in the commission of a particular offense); People v. Anderson, 272 Ill.App.3d 537, 540, 208 Ill.Dec. 954, 650 N.E.2d 648 (1995) (same). It has been noted that "successful challenges to the proportionality of a particular sentence are exceedingly rare." Adams, 198 Ill.App.3d at 81, 144 Ill.Dec. 402, 555 N.E.2d 761.[6]
Initially, we disagree with defendant that his offense was minor since he merely failed to report a change of his address, rather than to fail to register at all. First, the statutory language does not distinguish between the two offenses; both are considered offenses and treated the same. Second, and more importantly, the effect of either offense is the same. Law enforcement agencies are not able to monitor offenders and, therefore, they cannot fulfil the goal of the Act in protecting the public from sex offenders. Accordingly, the distinction *118 raised by defendant is a distinction without a difference. Moreover, it has been held that a person who commits one of the enumerated offenses under the Act is a "very serious threat to society." Adams, 198 Ill.App.3d at 82, 144 Ill.Dec. 402, 555 N.E.2d 761. This is true whether that person fails to register or whether the person has registered and later fails to report a change of address with the appropriate authoritieseither person is a serious threat based on his underlying conviction.
Because of the seriousness of the underlying offense, the legislature enacted the Act to aid law enforcement authorities in protecting the public. Without a means to enforce the Act, the purpose of the Act cannot be fulfilled and there would no reason for it. Additionally, because protection of children (and the general public) from sex offenses was a substantial concern to the legislature, we can assume that the legislature also regarded a violation of the Act as serious. As such, defendant's argument that the nature of the offense in question is a minor offense is not supported by law. In fact, because defendant failed to report a change of his address, law enforcement agencies did not know his whereabouts, whether he was across the street from his registered address or not, and if defendant had been so inclined, he could have committed additional sexual assaults and remained undetected for any length of time. Therefore, we do not believe that a penalty of one to three years for failure to comply with the Act, given the purpose of the Act in protecting the public and monitoring offenders, is not so cruel, degrading, or shocking to the moral sense. Clearly, the legislature was of the belief that a Class 4 penalty was necessary to halt the increased commission of underlying offenses and we defer to its determination. Accordingly, we conclude that the penalty under the Act does not violate the proportionate penalties clause of the Illinois Constitution.

II. Sentence Abuse
We first address the State's argument with respect to sentencing. The State contends that the trial court erred in failing to fine defendant $500 because the Act mandates imposition of such a fine.
Pursuant to the Act, "[t]he court shall impose a mandatory minimum fine of $500 for failure to comply with any provision of this Article." 730 ILCS 150/10 (West 1998). Accordingly, we agree with the State's contention.
Defendant contends that the trial court abused its discretion in sentencing him to four years' imprisonment, relying on sentences handed down in other Act violation cases where the defendants received lesser sentences. Defendant also maintains that the trial court abused its discretion in imposing an extended-term sentence because defendant's crime was a victimless crime and was administrative in nature. The State contends that defendant's sentence was proper based on his significant criminal history, his pattern of criminality that indicates he is a poor candidate for rehabilitation, and his poor work record, despite his significant level of education. Defendant responds that we should look at the specific penalty in this case in light of similar cases and that we, in fact, are allowed to do so.
In sentencing a defendant, the trial court must look to the nature and circumstances of the offense and "the history, character and condition of the offender." Kolzow, 319 Ill.App.3d at 679, 253 Ill.Dec. 785, 746 N.E.2d 27. Specifically, "[t]he trial judge imposes a sentence based on the totality of circumstances of each case, giving due consideration to such factors as the `defendant's credibility, demeanor, general moral character, mentality, social environment, *119 habits, and age.' [Citation.]" Kolzow, 319 Ill.App.3d at 679-80, 253 Ill. Dec. 785, 746 N.E.2d 27. "The trial judge is in the best position to weigh these factors and has considerable discretion in imposing a sentence because the judge has personally observed the proceedings and the defendant." Kolzow, 319 Ill.App.3d at 680, 253 Ill.Dec. 785, 746 N.E.2d 27.
While we agree with defendant that we may look at sentences imposed in other similar cases, such comparison is not helpful here. The cases defendant relies upon merely identify the sentences the defendants received. In those cases, there was no issue as to the propriety of the sentences imposed. Additionally, there was no evidence in those cases as to what factors the trial court relied upon in imposing the sentences, nor as to the defendants' backgrounds, prior convictions, or other factors relevant to the imposition of an appropriate sentence. Accordingly, we cannot make a comparison to other cases in addressing the propriety of defendant's sentence since there are no facts in those cases with which to compare defendant's sentence. See Kolzow, 319 Ill.App.3d at 681, 253 Ill.Dec. 785, 746 N.E.2d 27 ("The range of penalties available to the trial judge in imposing a sentence confirms the fact that the law recognizes that felons convicted of the same crime should be sentenced based on the circumstances of the crime and their background").
In determining whether the trial court properly found defendant eligible for an extended-term sentence, we review the court's decision based on an abuse of discretion standard. People v. Taylor, 278 Ill.App.3d 696, 698, 215 Ill.Dec. 612, 663 N.E.2d 1126 (1996). "While a trial court's decision regarding sentencing should not be reversed absent an abuse of discretion, our supreme court has held that extended-term sentencing was not intended to enhance the punishment for every offense." Taylor, 278 Ill.App.3d at 698, 215 Ill.Dec. 612, 663 N.E.2d 1126. Additionally, simply because a defendant is eligible for an extended-term sentence "does not require that result." People v. Nolan, 291 Ill. App.3d 879, 887, 225 Ill.Dec. 841, 684 N.E.2d 832 (1997).
Based upon a review of the record here, we conclude that the trial court abused its discretion in sentencing defendant to an extended-term sentence of four years. We believe that such a result was manifestly unjust and is not required given the facts of this case. While we note that defendant had three prior felony convictions (one in 1978, one in 1986, and one in 1996), he was out of prison for approximately six years, from 1990 to 1996, without incident. In addition, the nature of his offenses and the length of time between them are not indicative that he is a dangerously aggressive criminal. See Nolan, 291 Ill.App.3d at 887, 225 Ill.Dec. 841, 684 N.E.2d 832. Moreover, while we do not condone defendant's conduct, defendant had registered as required by the Act, then, when he was released from prison, he temporarily moved across the street and failed to report to the authorities a change of his address. There is no evidence that defendant was attempting to hide from the authorities, nor that he was avoiding detection. Furthermore, as discussed above, there was no victim in the instant case; defendant did not commit another sexual assault or abuse. Lastly, as defendant notes, the sentence imposed in the instant case exceeds, by at least two years, the time under which he would have been required to register under the Act. We do not believe that the legislature, in enacting the registration and penalty provisions of the Act, had such a result in mind. Accordingly, we reduce defendant's sentence to one year. We further order that defendant *120 be fined $500, as required by section 10 of the Act.

CONCLUSION
For the reasons stated, we affirm the circuit court's judgment, but modify defendant's sentence and order that defendant be fined $500.
Affirmed, as modified.
GORDON and CAHILL, JJ., concur.
NOTES
[1] At this time, defendant was not obligated to register under the provisions of the Act then in effect.
[2] The first act requiring registration by a sex offender was enacted in 1986 and applied only to child sex offenders, and only to individuals upon a second offense. People v. Logan, 302 Ill.App.3d 319, 323, 235 Ill.Dec. 539, 705 N.E.2d 152 (1998). Originally, the act prohibited notification of the registration information to anyone. Logan, 302 Ill.App.3d at 323, 235 Ill.Dec. 539, 705 N.E.2d 152. The Act now applies to all sex offenders, upon a first offense, and allows for disclosure to certain entities as well as the public, upon request. Logan, 302 Ill.App.3d at 324, 235 Ill. Dec. 539, 705 N.E.2d 152.
[3] This statement is true with respect to registration and notification. However, as noted above, the courts have not addressed the penalty provision.
[4] Prior to the defendant's conviction, the offense had been increased from a class 4 offense to a class 2 offense.
[5] As noted above, these cases address the constitutionality of the registration and notification provisions of the Act, not the penalty provision.
[6] Although this statement was made under an eighth amendment proportionality analysis discussion, section 11 of the Illinois Constitution is the equivalent of the eighth amendment. Department of Corrections ex rel. People of the State of Illinois v. Adams, 278 Ill. App.3d 803, 810, 215 Ill.Dec. 631, 663 N.E.2d 1145 (1996).