2022 IL App (1st) 211176-U
Order filed: December 22, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-1176

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 13652 |
| | ) | |
| GLENN WHITMORE, | ) | Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Lampkin and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's conviction for burglary is affirmed, where he was not prejudiced by the brief and inadvertent alarm of an electric monitoring device at trial; defendant's sentence is vacated, and this matter is remanded for resentencing, where the trial court improperly relied upon pending charges as an aggravating sentencing factor.

¶ 2    Defendant-appellant, Glenn Whitmore, appeals from his conviction for burglary and the 14.5-year sentence imposed for that conviction. For the following reasons, we affirm defendant's conviction but vacate his sentence and remand for resentencing.

¶ 3    Defendant was charged by information with a single count of burglary, in which it was alleged that on or about September 3, 2019, he entered a garage in Chicago, Illinois with the intent to commit a crime therein. The matter proceeded to a jury trial in March 2021, at which various

COVID-related safety protocols were instituted. These included implementing social distancing by placing the jury in the courtroom gallery, using the jury box as a witness stand, and allowing public viewing of the trial only by closed-circuit television viewable in a separate room of the courthouse.

¶ 4    Defendant was subject to electronic monitoring at the time of trial and was therefore wearing an electronic monitoring device (EMD) on his ankle during trial. The EMD was concealed from the jury by a skirt attached to the table at which defendant was seated. As the trial court was providing the jury with initial jury instructions, an alarm sounded from the EMD and a voice began to speak from the device. In response, defendant stood up and stated: "Judge, they are calling me. The Cook County Sheriff [is] calling me." Defense counsel's request for a recess was granted, and the jury was sent to the jury room.

¶ 5    Outside the jury's presence, the trial court worked with the sheriff's office to ensure that the EMD would not sound again during trial. This process took approximately one and a half hours. During the recess, the defense moved for a mistrial, arguing that the EMD alarm was akin to defendant improperly being seen by the jury in handcuffs or prison clothes. Defense counsel noted that there were skirts around the tables precisely so the jury could not see the EMD, a protective measure that was undone by the alarm. The trial court denied the request for a mistrial, finding that the EMD emitted only an "ambiguous" ringing noise that "sounded like a cellphone" and "the beginning of a conversation" and that the sound did not "necessarily indicate that [defendant was] in any kind of custody."

¶ 6    Defendant requested a curative limiting instruction, the State agreed, and when the jurors returned to the courtroom the court instructed them as follows:

> "Let me start off with this: We've had you waiting now for a little bit of time during

this period. We had some technical difficulties that were beyond anyone's control, certainly not the fault of the defense team or the prosecution team. It took us a while to try to work through it. I just wanted to be sure that we got it right. There is a lot of electronics here in terms of microphones and whatnot. I wanted to be sure that we got that right so we don't get interrupted again.

I think we have got that taken care of now. We don't anticipate another interruption like that going forward here. I appreciate your patience, and that's from my standpoint as well as the—of both—both parties. So I want to thank you."

¶ 7    After the trial court finished providing the jury with initial instructions and the parties gave their opening statements, the State called the victim, Thomas Hampton, as its first witness. In the early morning of September 3, 2019, Hampton was home with his wife. He was sleeping on his living room couch when he heard a noise coming from his back yard. He looked out a window, and across the alley he saw two men standing in a restaurant parking lot. A third person approached, and one of the two original men handed something to him. The third person then went out of Hampton's sight.

¶ 8    Soon thereafter, Hampton saw a light on in his detached garage. Hampton, a licensed gun owner, got his gun and went to investigate. When he entered the garage, Hampton saw defendant standing with a flashlight in his hand. Hampton drew his gun and ordered defendant to show his hands and walk toward him. Defendant complied, putting the flashlight on top of a car. Hampton then saw that defendant was also holding a compressor. Hampton had defendant lie down on his stomach and asked his wife to call the police, who arrived shortly thereafter.

¶ 9    Hampton did not know defendant and did not give him permission to be in his garage or take his compressor. Hampton testified that he keeps the compressor on a shelf by the door that

leads from the garage to his backyard. He first saw defendant by the garage door that leads to the alley. Hampton later discovered he was missing some tools from his garage, but he never saw defendant with them. Hampton also saw no evidence of forced entry to the garage. The State introduced surveillance footage from a store across the alley showing a person in the alley going under a small gap at the bottom of the garage door.

¶ 10 Detective Daniel Freeman testified that he spoke with defendant at the police station and defendant agreed to talk after being provided *Miranda* warnings. According to Freeman, defendant said that he went into the garage to sleep. Then he saw the compressor and was going to take it to sell it.

¶ 11 The defense rested without presenting any evidence, and the jury ultimately found defendant guilty of burglary. Defendant filed a posttrial motion for a new trial, which included an argument that he was denied a fair trial when the trial court denied his motion for a mistrial after the alarm of the EMD. The trial court denied that motion, explaining again that the EMD alarm sounded like a cell phone call. The trial court further explained:

"The Court's ruling on that issue is this; that the ringing of a cell phone sound and even the defendant, on his own, standing up and saying 'The sheriff is calling me, the sheriff is calling me' doesn't imply that he was in Cook County Department of Corrections custody. And even beyond that if there was such an implication, it was not constant. It wasn't pervasive. It wasn't repeated. It was that one time. And so I do not think that that area or that factor in the motion for new trial survives."

¶ 12 At the subsequent sentencing hearing, the parties noted that the presentence investigative report (PSI) indicated that defendant had nine prior convictions, a mix of misdemeanors, felonies, and ordinance violations. Of the felonies, the PSI showed convictions for three burglaries in 2009,

2000, and 1997, one conviction for possession of a controlled substance in 1994, and one conviction for delivery of a controlled substance in 1989. The misdemeanors and ordinance violation convictions included theft in 2014, criminal damage to property in 2009, selling goods on CTA property in 2005, and cannabis possession in 1984. In addition, at sentencing the State noted a fourth prior burglary conviction from 2007 that was missing from the PSI, bringing the total to ten prior convictions. The PSI also listed four pending charges for criminal trespass, criminal damage to property, violation of bail bond based on criminal trespass, and escape from electronic monitoring. The parties agreed that based on defendant's background, the trial court was required to impose a Class X sentence.

¶ 13    The PSI also indicated that defendant's parents physically abused him as a child, so he spent most of his time being raised by his maternal grandparents. He was employed as a driver for a Chicago Park District golf course collecting balls on the driving range from 2002 until his arrest. He maintained a close relationship with supportive siblings. He had been homeless for fifteen years, staying with friends and relying on family. Defendant reported multiple medical ailments, including diabetes, multiple myeloma, bone marrow cancer, kidney and heart issues, and high blood pressure. Defendant was 57 years old at the time of sentencing.

¶ 14    The State asked for an "appropriate sentence," while the defense sought the minimum sentence of six years because this was a minor crime in which nothing was broken or stolen, and because defendant's criminal background was not violent. The trial court sentenced defendant to 14.5 years of imprisonment, stating as follows:

> "I've considered all the factors in aggravation and mitigation. As it relates to some
> of the factors in aggravation, they include the defendant's criminal history; a burglary
> conviction in [c]ase 09 CR 10250 February of 2010 sentenced to eight years Illinois

Department of Corrections; a burglary conviction 2007—well, the sentence is in 2008 but the case is 07 CR 17310 ***. There are beyond that a burglary conviction from the year 2000 or a 2000 case, 00 CR 29403, seven years in the penitentiary. That was in March of 2001. A burglary conviction from case 97 CR 27709 that was in May of 1998. And then beyond that ten additional convictions—I'm sorry—at least cases or contacts, including convictions, in the criminal justice system. There's also an escape charge that's pending here relating to the defendant I think being on electronic monitoring on our case.

* * *

Considering the length of defendant's criminal history obviously he must be sentenced as a Class X offender and whereas I don't think the upper range of the Class X area is appropriate I do think there has to be a substantial sentence here.

The sentence here is going to be 14 and a half years Illinois Department of Corrections. That's as a Class X offender."

Defendant's motion to reconsider his sentence was denied, and he timely appealed.

¶ 15   On appeal, defendant first contends that the trial court abused its discretion in denying his motion for a mistrial based on the sounding of the EMD. A trial court's decision to declare a mistrial or not is reviewed for an abuse of discretion. *People v. Kosobucki*, 2021 IL App (2d) 190476, ¶ 37, *as modified on denial of reh'g* (May 10, 2021).

¶ 16   Initially, we note that the parties have disputed several preliminary matters regarding this issue, with the State arguing that "defendant cannot argue that a mistrial was warranted due to the recess, its length, or the post-recess jury instruction, nor can he argue that a mistrial was warranted because his own outburst led the jurors to believe that he was subject to electronic monitoring." The State contends this is so because defendant himself made the outburst, he requested the recess

and the limiting instruction, and defendant never raised an objection to the length of the recess or the wording of the instruction below. The State therefore contends that any argument as to these issues on appeal is barred by the doctrines of invited error, estoppel, waiver, and forfeiture. We need not address these preliminary arguments further. Even assuming defendant can overcome such procedural hurdles, we find that his assertions of prejudice resulting from the alarm of the EMD, his outburst, the length of the recess, and the curative instruction to be meritless.

¶ 17     Defendant is certainly correct that courts have long recognized that "[p]hysical restraints should be avoided whenever possible because they tend to prejudice the jury against the defendant, hinder the defendant's ability to assist counsel, and offend the dignity of the judicial process." *People v. Reese*, 2017 IL 120011, ¶ 46. For similar reasons, courts have also recognized that a "defendant's right to a fair trial is violated when he is forced to appear before the jury in readily identifiable jail clothing." *People v. Steinmetz,* 287 Ill. App. 3d 1, 6 (1997) (citing *Estelle v. Williams,* 425 U.S. 501, 505–06 (1976)). Analogizing the circumstances here to such situations, defendant contends that his "due process rights to a fair trial and the presumption of innocence were violated when he was forced to stand trial before a jury that heard his EMD alarm sound prior to opening statements."

¶ 18     However, even assuming that the circumstances here can be analogized to the improper use of physical restraints or forcing a defendant to appear in front of a jury in prison clothes, any possible error may be found harmless where the State proves beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *People v. Reese*, 2017 IL 120011, ¶ 50 (shackling); *People v. Foster*, 80 Ill. App. 3d 990, 995 (1980) (handcuffs); *People v. Bowman*, 2012 IL App (1st) 102010, ¶ 62 (prison clothes). And many cases have found such harmless error where the jury was only briefly exposed to a defendant in restraints or prison clothes and the

evidence of guilt was overwhelming. *Reese*, 2017 IL 120011, ¶ 56; *People v. Schaefer*, 217 Ill. App. 3d 666, 671 (1991); *Foster*, 80 Ill. App. 3d at 995; *People v. Greene*, 102 Ill. App. 3d 933, 936 (1981).

¶ 19    Here, the EMD alarm and the accompanying voice was found by the trial court to be an "ambiguous" ringing noise that "sounded like a cellphone" and "the beginning of a conversation" that did not "necessarily indicate that [defendant was] in any kind of custody." It was not even clear from the record that the jury heard the alarm or voice from its socially-distanced location. Even if the jury did, the alarm of the EMD and accompanying voice was inadvertent, brief and did not reoccur at trial. In addition, the evidence presented by the State was overwhelming and was not countered by any defense evidence at trial. Just as in the above cited cases (*supra* ¶ 18), we find that any possible error was harmless.

¶ 20    While defendant contends that he was further prejudiced by his own outburst, the length of the recess, and a purportedly insufficient curative instruction, all of these are merely citied as additional evidence supporting defendant's contention that he was improperly tried by a jury that was "tainted by awareness of his restrained liberty." For all the reasons discussed above, even if we accept defendant's argument that the jury did surmise that he was subject to electronic monitoring, any possible error was harmless. The trial court therefore did not abuse its discretion in denying defendant's motion for a mistrial.

¶ 21    Defendant next contends that his sentence must be vacated because the trial court improperly relied upon pending charges as an aggravating factor at sentencing. We agree.

¶ 22    Defendant acknowledges that this issue has not been preserved for our review. See *People v. Wooden*, 2014 IL App (1st) 130907, ¶ 10 (citing *People v. Hillier*, 237 Ill. 2d 539, 545 (2010)) (a defendant must contemporaneously object to a sentencing error and raise it in a post-trial

motion). Defendant contends that we may remand for a new sentencing hearing under the plain error doctrine.

¶ 23    Under the plain error doctrine, in the sentencing context, a reviewing court may excuse a party's procedural default if a clear and obvious error has occurred and either: (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *Hillier*, 237 Ill. 2d at 545 (citing *People v. Hall*, 195 Ill. 2d 1, 18 (2000)). Defendant bears the burden of persuasion as to the applicability of the plain error doctrine. *Wooden*, 2014 IL App (1st) 130907, ¶ 10. In applying any analysis of the plain error doctrine, we must first determine whether any error occurred. *People v. Walker*, 232 Ill. 2d 113, 124 (2009).

¶ 24    Where the trial court relies on an improper sentencing factor, a defendant may be entitled to a new sentencing hearing. *People v. Walker*, 2012 IL App (1st) 083655, ¶ 30. Courts have consistently held that the mere existence of arrests or pending charges, without additional evidence presented at the sentencing hearing to test the accuracy of the underlying facts, may not be considered in aggravation. See *People v. Minter*, 2015 IL App (1st) 120958, ¶ 148 (improper to consider pending charges for possession and aggravated battery as aggravating factors); *People v. Johnson*, 347 Ill. App. 3d 570, 576 (2004) (improper to consider arrest for sexual assault in Arkansas); *People v. Wallace*, 145 Ill. App. 3d 247, 256 (1986) (improper to consider pending rape charge); *People v. Thomas*, 111 Ill. App. 3d 451, 454 (1983) ("[M]ere listing of prior arrests, not resulting in convictions, in a presentence report [improper]. We therefore hold that mere arrests, standing alone, without further proof of the conduct alleged, are inadmissible in the sentencing determination."). We review *de novo* whether a court relied on an improper factor in imposing a sentence. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8.

¶ 25    Here, the trial court clearly and properly referenced defendant's 10 prior convictions as an aggravating factor, but it also very clearly and improperly referenced his four pending charges. Indeed, the trial court appears to have double-counted one of those charges when it additionally and separately referenced an "escape charge that's pending here relating to the defendant I think being on electronic monitoring on our case." No evidence was introduced at the sentencing hearing regarding these pending charges beyond their mere listing in the PSI. The trial court's consideration of those pending charges therefore constitutes clear error.

¶ 26    Our supreme court has instructed that when a trial court considers an improper factor in sentencing a defendant, the court's sentencing decision must be vacated and the case remanded for resentencing unless it is clear from the record that the improper factor was so insignificant that its consideration did not result in a greater sentence. *People v. Martin*, 119 Ill. 2d 453, 458 (1988); *People v. Bourke*, 96 Ill. 2d 327, 332 (1983); *People v. Conover*, 84 Ill. 2d 400, 405 (1981). "Where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing." *Bourke*, 96 Ill. 2d at 332.

¶ 27    Here, defendant's prior criminal history, including the pending charges, were the only aggravating factors mentioned by the trial court. We find that—at a minimum—it is impossible to determine the weight the trial court gave the pending charges on this record. We certainly cannot say it is *clear* from the record that the weight given to the pending charges was so insignificant that it did not result in a greater sentence. We therefore vacate defendant's sentence and remand for resentencing.

¶ 28    In light of this conclusion, we need not consider defendant's final, alternative argument that his 14.5 year sentence was excessive.

¶ 29　　For the foregoing reasons, the judgment of the circuit court is affirmed in part and vacated in part, and this matter is remanded for resentencing.

¶ 30　　Affirmed in part and vacated in part; cause remanded.