2024 IL App (1st) 231112-U
No. 1-23-1112
Order filed September 19, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 13652 |
| | ) | |
| | ) | Honorable |
| GLENN WHITMORE, | ) | Arthur F. Hill Jr. and |
| | ) | John F. Lyke Jr., |
| Defendant-Appellant. | ) | Judges, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm defendant's nine-year sentence for burglary over his contention that the sentence is excessive.

¶ 2     Following a jury trial, defendant was found guilty of burglary and sentenced as a Class X offender to 14½ years' imprisonment. On direct appeal, we vacated his sentence and remanded for resentencing because the trial court improperly relied upon pending charges as an aggravating factor. *People v. Whitmore*, 2022 IL App (1st) 211176-U. Following a new sentencing hearing on

remand, the trial court imposed a sentence of nine years' imprisonment.[1] On appeal, defendant argues that his sentence is excessive given the relative seriousness of the offense and the mitigating factors. We affirm.

¶ 3    The following factual recitation is derived from our prior order on direct appeal.

¶ 4    Defendant was charged by information with a single count of burglary, in which it was alleged that on or about September 3, 2019, he entered a garage in Chicago, Illinois with the intent to commit a crime therein. The matter proceeded to a jury trial in March 2021.

¶ 5    Thomas Hampton testified that in the early morning of September 3, 2019, he was home with his wife. He was sleeping on his living room couch when he heard a noise coming from his backyard. He looked out a window, and across the alley he saw two men standing in a restaurant parking lot. A third person approached, and one of the two original men handed something to him. The third person then went out of Hampton's sight.

¶ 6    Soon thereafter, Hampton saw a light on in his detached garage. Hampton, a licensed gun owner, got his gun and went to investigate. When he entered the garage, Hampton saw defendant standing with a flashlight in his hand. Hampton drew his gun and ordered defendant to show his hands and walk toward him. Defendant complied, putting the flashlight on top of a car. Hampton then saw that defendant was also holding a compressor. Hampton had defendant lie down on his stomach and asked his wife to call the police, who arrived shortly thereafter.

¶ 7    Hampton did not know defendant and did not give him permission to be in his garage or take his compressor. Hampton testified that he keeps the compressor on a shelf by the door that leads from the garage to his backyard. He first saw defendant by the garage door that leads to the

---

[1] The Honorable Arthur F. Hill Jr. presided over defendant's trial and original sentencing hearing. The Honorable John F. Lyke Jr. presided over the proceedings on remand.

alley. Hampton later discovered he was missing some tools from his garage, but he never saw defendant with them. Hampton also saw no evidence of forced entry to the garage. The State introduced surveillance footage from a store across the alley showing a person in the alley going under a small gap at the bottom of the garage door.

¶ 8    Detective Daniel Freeman testified that he spoke with defendant at the police station and defendant agreed to talk after being provided *Miranda* warnings. According to Freeman, defendant said that he went into the garage to sleep. Then he saw the compressor and was going to take it to sell it.

¶ 9    The defense rested without presenting any evidence, and the jury ultimately found defendant guilty of burglary.

¶ 10    At the subsequent sentencing hearing, the parties noted that the presentence investigative report (PSI) indicated that defendant had nine prior convictions, a mix of misdemeanors, felonies, and ordinance violations. Of the felonies, the PSI showed convictions for three burglaries in 2009, 2000, and 1997, one conviction for possession of a controlled substance in 1994, and one conviction for delivery of a controlled substance in 1989. The misdemeanors and ordinance violation convictions included theft in 2014, criminal damage to property in 2009, selling goods on CTA property in 2005, and cannabis possession in 1984. In addition, at sentencing the State noted a fourth prior burglary conviction from 2007 that was missing from the PSI, bringing the total to 10 prior convictions. The PSI also listed four pending charges for criminal trespass, criminal damage to property, violation of bail bond based on criminal trespass, and escape from electronic monitoring. The parties agreed that based on defendant's background, the trial court was required to impose a Class X sentence.

¶ 11    The PSI also indicated that defendant's parents physically abused him as a child, so he spent most of his time being raised by his maternal grandparents. He was employed as a driver for a Chicago Park District golf course collecting balls on the driving range from 2002 until his arrest. He maintained a close relationship with supportive siblings. He had been homeless for 15 years, staying with friends and relying on family. Defendant reported multiple medical ailments, including diabetes, multiple myeloma, bone marrow cancer, kidney and heart issues, and high blood pressure. Defendant was 57 years old at the time of sentencing.

¶ 12    The State asked for an "appropriate sentence," while the defense sought the minimum sentence of six years because this was a minor crime in which nothing was broken or stolen, and because defendant's criminal background was not violent.

¶ 13    The trial court sentenced defendant to 14½ years' imprisonment. In so holding, the trial court stated that in addition to "all the factors in aggravation and mitigation," including defendant's prior convictions and status as a Class X offender, it also considered the pending cases listed in the PSI and "an escape charge that's pending." No evidence was introduced at the sentencing hearing regarding the pending charges.

¶ 14    Defendant appealed, arguing that the court's consideration of pending charges as an aggravating factor was clear error. Because the court improperly referenced the pending charges in such a way that we were unable to determine the weight given to those charges, we vacated the sentence and remanded for resentencing. *Whitmore*, 2022 IL App (1st) 211176-U, ¶¶ 21-27. We did not reach defendant's alternative argument that the 14½-year sentence was excessive. *Id.* ¶ 28.

¶ 15    On remand, the court ordered a new PSI, which showed seven prior convictions.[2] While again not reported on the PSI, the State introduced into evidence a certified copy of the additional burglary conviction from 2007. The new PSI reported that defendant said he was raised by his parents, who "whooped" him, but also that he had a "normal" and "loving" childhood. It contained other facts that contradicted the first PSI, such as defendant's statements that he worked at the golf course on and off from 1996, not from 2002, and that he had lived with his sister for 20 years before his arrest.

¶ 16    At the resentencing hearing on May 16, 2023, the State called Margaret Geinosky, a correctional officer with the Cook County Sheriff's Department, to testify in aggravation regarding a new, pending misdemeanor charge of public indecency. Geinosky testified that while working at the Cook County jail on March 5, 2023, she encountered defendant while he was being escorted into a holding area. A glass wall separated Geinosky and defendant, whom Geinosky testified was secured by one hand. Defendant began yelling sexual profanities at Geinosky. Defendant lowered his pants and exposed his genitals to Geinosky, then turned around and spread his buttocks. Geinosky ordered defendant to raise his pants, and when he did not comply, she issued him a disciplinary ticket.

¶ 17    In allocution, defendant admitted he "said some bad things" to Geinosky, but he denied exposing himself. He said he was handcuffed and his pants were falling down. He also denied the burglary and said he had "been smoking all week" and "saw the garage open and went in there and got some rest."

_____

[2] Missing from the new PSI were defendant's convictions from 2005 for selling goods on CTA property and from 1984 for cannabis possession.

¶ 18    The State asked that the court impose the same prison sentence of 14½ years. Defendant requested the minimum sentence of six years for a Class X offender.

¶ 19    The trial court stated that for purposes of sentencing, it was considering:

"the appellate court's remand order and their recitation of the facts of the case, the gravity of the offense, the pre-sentence investigation report, the financial impact of incarceration, the evidence here at the sentencing hearing, any substance abuse issues and treatment that the defendant has, his potential for rehabilitation, the possibility of sentencing alternatives, *** [and] the age of this defendant, being 58 years of age, admittedly fighting a drug addiction for a number of years."

¶ 20    Regarding the incident with Geinosky, the trial court noted that it "is not giving that as tremendous amount of weight" because, although Geinosky gave "powerful testimony," the facts were contested and there was no video evidence or other witness testimony.

¶ 21    The trial court sentenced defendant to nine years in prison. The court denied defendant's motion to reconsider the sentence.

¶ 22    On appeal, defendant argues the nine-year prison term is excessive where the offense caused "no lasting harm" and there was evidence in mitigation.

¶ 23    Under the Illinois Constitution, a trial court shall impose a sentence that reflects both "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. The trial court has broad discretion in imposing a sentence and is entitled to great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). On review, we do not reweigh the aggravating and mitigating factors and may not substitute our judgment for that of the trial court merely because we could have weighed the factors differently. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. We may not

vacate or modify a sentence absent a finding of error or abuse of discretion. *People v. Webster*, 2023 IL 128428, ¶ 32.

¶ 24    Here, the court sentenced defendant to nine years' imprisonment based on his status as a Class X offender. See 730 ILCS 5/5-4.5-95(b) (West 2018) (defendant convicted of Class 1 or Class 2 forcible felony after two other Class 2 or greater felony convictions shall be sentenced as Class X offender). Nine years falls within the statutory range. See 730 ILCS 5/5-4.5-25(a) (West 2018) (minimum 6-year to maximum 30-year sentence for Class X offenders). We presume a sentence within statutory limits is proper and will reverse only on an affirmative showing that the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000); see also *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 25    Defendant does not dispute that his sentence is within the proper sentencing range. Rather, he emphasizes that this offense, like his prior convictions, was not violent and "no lasting harm" was done. He points to his past employment, strong family ties, age, and poor health as mitigating factors. He also argues that, given that he will be at least 60 years old when he is released and incarceration has been shown to reduce life expectancy, the nine-year sentence "undermines the Illinois Constitution's mandate to impose a sentence with the goal of restoring the offender to useful citizenship."

¶ 26    Here, the record shows that the trial court properly considered all factors in aggravation and mitigation. The court explicitly addressed the seriousness of the offense as well as defendant's age, substance abuse history, and potential for rehabilitation. In addition, defendant's PSI described his past employment, familial support, and medical conditions. Therefore, the trial court was aware of and considered the mitigating factors defendant identifies on appeal. See *People v.*

*Kindle*, 2021 IL App (1st) 190484, ¶ 67 (we presume the trial court considered all mitigating evidence absent affirmative indication to the contrary, besides the sentence itself). Moreover, the court is not obligated to impose the minimum sentence, even where there is evidence in mitigation. *People v. Sims*, 403 Ill. App. 3d 9, 24 (2010).

¶ 27    In light of this record, defendant is essentially asking this court to reweigh the sentencing factors presented and substitute our judgment for that of the trial court. This we will not do. See *Knox*, 2014 IL App (1st) 120349, ¶ 46 ("a reviewing court will not reweigh the factors in reviewing a defendant's sentence and may not substitute its judgment for that of the trial court merely because it could or would have weighed the factors differently").

¶ 28    As defendant notes, the seriousness of the crime is the most important factor in determining an appropriate sentence. See *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 22. However, the burglary of a residential garage, with the risks that entails to the residents of the home, is a serious offense. In addition, considering defendant's prior burglary sentences of four years in 1997, seven years in 2000, and eight years in 2009, nine years for another burglary conviction is not excessive. See *People v. Williams*, 2019 IL App (1st) 173131, ¶ 29 (criminal history alone may warrant a sentence above the minimum). As a result, we do not find that the court abused its discretion in sentencing defendant to nine years' imprisonment, a term at the low end of the statutory range for a Class X offender. See *Webster*, 2023 IL 128428, ¶ 32 (appellate court has no authority to modify a sentence absent a finding of error or abuse of discretion).

¶ 29    In support of his request that we reduce his sentence, defendant cites several cases where an appellate court found a sentence disproportionate to the offense and either reduced the sentence or remanded for resentencing. See *People v. Maggette*, 195 Ill. 2d 336 (2001); *People v. Hearring*, 2022 IL App (1st) 192064; *People v. Busse*, 2016 IL App (1st) 142941. However, "our supreme

court has rejected an approach that compares sentences between defendants in unrelated cases." *People v. Brown*, 2017 IL App (1st) 142877, ¶ 65 (citing *People v. Fern*, 189 Ill. 2d 48, 56 (1999)). We decline defendant's invitation to do so here. Further, although defendant references studies showing that "[i]ncarceration shortens life expectancy" and that arrest rates decline for individuals of advanced age, this evidence was not presented to the trial court and cannot be considered for the first time on appeal. See *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 507 (1997) (evidence not offered during trial cannot be introduced for the first time on appeal).

¶ 30    For the reasons stated above, we affirm the trial court's order sentencing defendant to nine years in prison for burglary.

¶ 31    Affirmed.